IN THE DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHINECO, INC., XIA SHENG, and HUAN YAO,<br><br>Plaintiffs,<br>v.<br><br>THE NASDAQ STOCK MARKET LLC,<br><br>Defendant. | Civil Action No. _____ |

## VERIFIED COMPLAINT

Plaintiffs Shineco, Inc. ("Shineco"), Xia Sheng ("Sheng"), and Huan Yao ("Yao," and together with Shineco and Sheng "Plaintiffs"), by and through the undersigned counsel, state the following:

## PRELIMINARY STATEMENT

Shineco is one of several Chinese companies that, on information and belief, has been targeted by self-regulatory organizations ("SROs") generally, and by Nasdaq Stock Market, LLC's ("Nasdaq") specifically for removal from the U.S. capital markets. Nasdaq warranted to Shineco that it would provide goods and services to Shineco in a "good and workmanlike manner," but has failed to meet its obligation. Nasdaq fundamentally changed its internal rules and applied them *ex post facto* to Shineco, which led to Nasdaq determining to delist Shineco. The clear chronology of the *ex post facto* application of the relevant rule simply was as follows: (1) On June 16, 2025, Nasdaq instituted delisting proceedings citing to Shineco's properly executed and fully compliant November 12, 2024 1-for-24 reverse stock split; (2) on November 20, 2024, the Securities and Exchange Commission ("SEC") initiated its proceedings to determine whether to approve or disapprove Nasdaq's relevant proposed rule; (3) on January 17, 2025, a new Nasdaq rule became

effective and essentially disqualified Shineco from eligibility to qualify for a 180-calendar day period to demonstrate compliance with Nasdaq's $1 bid-price rule. During the July 24, 2025 delisting hearing, the Hearings Panel asked only two questions directly of Shineco, and did not appear to engage in a good faith review of Nasdaq's determination to delist Shineco. Nasdaq's bad faith review of its delisting determination was all but confirmed when, *less than twenty four hours after the hearing*, the Hearing Panel denied Shineco's request to Nasdaq for an extension to demonstrate compliance with Nasdaq's rules.

Nasdaq's failure to consider Shineco's request in good faith, and to apply new rules to Shineco, *ex post facto*, are breaches by Nasdaq of its Listing Agreement with Shineco. Moreover, Nasdaq's breaches have caused and will cause irreparable harm to Shineco if Nasdaq is not enjoined from moving forward with suspending and delisting Shineco's stock without Shineco receiving a full and fair opportunity for the Nasdaq Listing and Hearing Review Council ("Listing Council") to call for review the Hearing Panel decision and stay the suspension and delisting, and for Shineco to exhaust its appeal rights within the Nasdaq, to the SEC and, if necessary, thereafter to the United States Court of Appeals.

**PARTIES**

1.     Shineco is a Delaware corporation, with its principal place of business in Beijing, People's Republic of China. Shineco is a provider of diagnostic medical products and related medical devices.

2.     Plaintiff Xia Sheng is an individual who resides in Shanghai, People's Republic of China.

3.     Plaintiff Huan Yao is an individual who resides in Beijing, People's Republic of China.

4. Plaintiffs Sheng and Yao are shareholders of Shineco.

5. Defendant Nasdaq is a Delaware corporation, registered to do business in the State of New York as a private, for-profit stock exchange.

## JURISDICTION AND VENUE

6. This is an action arising under the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a-78rr ("Exchange Act"), and the Declaratory Judgment Act 28 U.S.C. §§ 2201 and 2202.

7. This Court has jurisdiction over this matter pursuant to 15 U.S. Code § 78aa and 28 U.S.C. §§ 1331 in that it involves an action arising under the Exchange Act and the Declaratory Judgment Act.

8. Plaintiffs' claims arise factually from Defendant's breaches of duties as a SRO under the Exchange Act and the Exchange Act's implementing regulations.

9. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

10. Plaintiff Shineco is a corporate resident of Delaware, Plaintiff Sheng is a citizen of the People's Republic of China, and Plaintiff Yao is a citizen of the People's Republic of China.

11. Defendant Nasdaq is subject to personal jurisdiction in this Court because its principal place of business is its headquarters in New York, 151 West 42nd Street, Floors 26, 27, 28, New York, NY 10036, United States, New York County.

12. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391(b)(1) because Defendant Nasdaq resides in this District via its principal place of business.

## SUMMARY OF THE ACTION

13. On April 28, 2016, Nasdaq, under the signature of its Director, Listing Qualifications, notified Shineco that the Nasdaq Capital Market's staff had approved Shineco's application to list its common stock on the Nasdaq. In connection therewith, Plaintiff Shineco

3

entered into a Listing Agreement with Defendant, under which Defendant agreed to list Plaintiff Shineco's securities on the Nasdaq exchange.

14. Trading on the Nasdaq comes with a significant monetary cost. Consistent therewith, the letter of April 28, 2016, informed Shineco that "[t]he balance of the entry fee for [Shineco's] initial inclusion in Nasdaq is estimated to be $70,000." On April 29, 2016, Shineco wire transferred $70,000 to Nasdaq, the first of many annual payments to Nasdaq.

15. The Listing Agreement provides that it "shall be construed and enforced in accordance with the laws of the State of New York."

16. In the Listing Agreement, Nasdaq warranted that it would "endeavor to provide" goods and services "in a good and workmanlike manner."

17. As an exchange and SRO under the Exchange Act, Nasdaq's obligations and warranty of "good and workmanlike" performance under the Listing Agreement required Nasdaq to apply its own Listing Rules judiciously and not in an arbitrary and capricious manner.

18. Over a period of fewer than 45 days, Defendant hastily pursued a course of action to delist Plaintiff Shineco's securities from the Nasdaq, without regard to the effect of depriving Shineco of the opportunity to receive a stay of any suspension and delisting as provided in the Nasdaq Listing Rules.

19. Over the same period of fewer than 45 days, Defendant hastily pursued a course of action to delist Plaintiff Shineco's securities from the Nasdaq, despite its wrongful application of a new Nasdaq Listing Rule *ex post facto*.

20. Defendant breached the Listing Agreement warranty and implied covenant of good faith and fair dealing by failing to provide Shineco adequate notice and time to comply following

before taking suspension and delisting action, and through Defendant's wrongful delisting determination itself.

21. Plaintiffs now bring this action seeking urgent relief from Defendant's breaches of the Listing Agreement and a declaration of Shineco's right for the Listing Council to call for review the Hearings Panel decision and stay the suspension and delisting and to appeal the delisting determination before Defendant suspends trading of Shineco's shares.

## STATEMENT OF FACTS

22. On or about June 16, 2025, Defendant determined to delist Shineco's securities from the Nasdaq Capital Market, based on the decision of Nasdaq staff concerning Shineco's compliance with Nasdaq Listing Rule 5550(a)(2) (the "Bid Price Requirement").

23. Under the Bid Price Requirement, a company primarily listed on the Capital Market must maintain a minimum bid price of at least $1 per share.

24. A deficiency under the Bid Price Requirement does not immediately lead to noncompliance. Per Nasdaq Listing Rule 5810(c)(3)(A): "A failure to meet the continued listing requirement for minimum bid price shall be determined to exist only if the deficiency continues for a period of 30 consecutive business days. Upon such failure, the Company shall be notified promptly and shall have a period of 180 calendar days from such notification to achieve compliance."

25. Within that 180-day grace period, the same rule requires the company to meet the bid price standard for only 10 consecutive business days to demonstrate compliance. Nasdaq staff has discretion under Listing Rule 5810(c)(3)(H) to require more time under the Bid Price

Requirement, "but generally no more than 20 consecutive business days, before determining that the Company has demonstrated an ability to maintain long-term compliance."

26. According to Nasdaq staff's June 16 findings, the bid price of Shineco's securities had closed below $1 per share on the Capital Market over the previous 30 consecutive business days (May 1 to June 12, 2025).

27. In the delisting determination, Nasdaq staff noted that Shineco had effected a 1-for-24 reverse stock split on November 12, 2024.

28. The staff thus invoked the recently-implemented Nasdaq Listing Rule 5810(c)(3)(A)(iv), which did not become effective until receipt of approval from the SEC until January 17, 2025. The Listing Rule provides, in pertinent part, that "[n]otwithstanding the foregoing, if a Company's security fails to meet the continued listing requirement for minimum bid price and the Company has effected a reverse stock split over the prior one-year period[,] . . . [then] the Company shall not be eligible for any compliance period specified in this Rule 5810(c)(3)(A)."

29. Defendant retroactively invoked this Listing Rule to find that Shineco's November 12, 2024 reverse stock split precluded Shineco from obtaining the 180-day grace period to comply.

30. Threatened with the delisting of its stock, Shineco timely requested a hearing before the Nasdaq Hearings Panel to seek an extension to demonstrate compliance with the Bid Price Requirement and avert the suspension of trading in Shineco's securities.

31. Nasdaq Listing Rule 5815(c)(1) provides the Hearings Panel the discretion to fashion a range of outcomes, including granting the Company an exception to the continued listing standards for up to 180 days from the date of the Delisting Determination or finding the listed company in compliance.

32. Likewise, Listing Rule 5815(d)(4) allows the Hearings Panel to institute various monitoring procedures to protect against future deficiencies.

33. On July 3, 2025, Shineco sent to the Hearings Panel a detailed and comprehensive Prehearing Submission outlining a revised financial, investment, and operational strategy, as well as progress toward Shineco's concrete objectives. That updated strategy already undertaken includes diversification both in Shineco's revenue sources and investments.

34. Shineco further explained its plan to reestablish compliance with the Bid Price Requirement in the Prehearing Submission, informing the Hearings Panel that Shineco had already obtained shareholder and Board approval for a reverse stock split at a ratio ranging from 1-for-5 to 1-for-75.

35. On July 11, 2025, Nasdaq staff sent to Shineco the Nasdaq staff's submission summarizing Defendant's arguments in support of delisting.

36. On July 15, 2025, Shineco filed a Definitive Schedule 14C Information Statement with the SEC regarding notice to shareholders of the planned reverse stock split, with a narrowed range of 1-for-25 to 1-for-60 and targeting a post-split price of approximately $8 per share.

37. On July 22, 2025, Shineco submitted a detailed PowerPoint to present a discussion about Shineco's business model and core advantages, competitive advantages, mergers and acquisition plan, future mergers and acquisition direction and logic, going-forward mergers and acquisition strategy, business development plan (separated into short-term (one to three years), medium-term (three to five years), and long-term (five to ten years)), expected terms and mergers and acquisitions timeline, specific measures to reduce losses, path to profitability and business diversification, plan for bid-price compliance, initiatives to sustain compliance, and pathway to profitability.

38. Shineco attended the Hearings Panel proceeding on July 24, 2025. At the hearing, Shineco sought to give the panel detail, with aid of the PowerPoint submitted two days earlier, a presentation of its plan to improve profitability beyond the July 3 Prehearing Submission.

39. Nasdaq's Hearings Panel Counsel opened the hearing by stating, in effect, that the Panel had no interest in learning about Shineco's business plan, despite the business plan's centrality to remain in bid-price compliance after the reverse merger. Instead, the Panel only wanted to know how Shineco would be able to maintain technical compliance with the minimum $1.00 bid price.

40. Shineco updated the Hearings Panel on its steps to obtain bid plan compliance. However, so as to be deferential to the Panel, or, put differently, so as not to irritate the Panel, Shineco did not discuss in detail and as it had intended its thoughtful and in-place business development plan.

41. Shineco's reverse stock split would become effective by August 18, 2025.

42. Shineco notified the Hearings Panel that August 29, 2025 would be its anticipated date of 10-consecutive business day compliance.

43. All of that information proved irrelevant to a Panel that apparently had predetermined the outcome of the Hearing without affording Shineco a full and fair hearing.

44. The Nasdaq staff attorney, at the conclusion of the Hearing, informed Shineco that a decision likely would be forthcoming in approximately two weeks. The original materials sent to Shineco indicated that a decision likely would follow in four weeks.

45. On July 25, 2025, fewer than 24 hours after completion of the hearing, the Hearings Panel denied Shineco's extension request, notifying counsel for Shineco that the delisting of Shineco's would take effect at the open of trading on July 29, 2025.

46. This delisting date precedes Shineco's anticipated date to demonstrate compliance under the Bid Price Requirement by a mere 31 calendar days, less than the time Shineco was found to be noncompliant under the Nasdaq staff's July 16 delisting determination.

47. The Hearings Panel's written decision was brief. In the first of two paragraphs of substantive rationale, the Hearings Panel noted prior deficiencies in Shineco's price per share, which was apparently the only fact the panel considered germane to its predetermined outcome.

48. Although Shineco's prior bid price deficiencies did not all involve reverse stock splits to remedy the deficiencies, the Hearings Panel discounted Shineco's detailed profit improvement plan outright.

49. Several of Shineco's diversifying acquisitions include consideration of Shineco stock to shareholders of acquired entities, accepted on the condition of Shineco's stock maintaining its listing. Under the terms of the transaction agreements, delisting would result in the unwinding of these acquisitions, rendering the Defendant's doubts in the viability of Shineco's profitability plan a self-fulfilling prophecy.

50. In determining to delist Shineco's securities, both the Nasdaq staff and the Hearings Panel disregarded the basic unfairness of delisting Shineco's stock because of a reverse stock split effected before approval of the rule restricting that action.

51. Neither the Nasdaq staff nor the Hearings Panel considered applying the discretion available under multiple Listing Rules to tailor and monitor a listed company's compliance.

52. Neither the Nasdaq staff nor the Hearings Panel considered their *ex post facto* application of a Listing Rule that was neither in its approval consideration process by the SEC or its effective date as of the date of Shineco's previous reverse stock split in November 2024.

53. Defendant has further threatened imminent action to deprive Plaintiff Shineco of its ability to publicly trade its securities based on summary procedures in which Defendant arbitrarily disregarded relevant information on review based on prior actions that were not restricted at the time Shineco committed them.

54. Rather than allow Shineco even a single month to remedy its bid price deficiency under monitoring procedures within Defendant's discretion, Defendant opted to do irreparable damage to Plaintiffs by immediately suspending listing and thereafter delisting their securities without the Listing Council calling for review the decision that ignored the ex post facto application of the Listing Rule.

55. Defendant Nasdaq is not an ordinary contract counterparty under the Listing Agreement; it is a national securities exchange and SRO bound under the Exchange Act to adhere to deliberative procedures in its making and application of rules to listed companies.

56. The Listing Agreement Defendant breached thus incorporated Nasdaq's duties in its obligations to Plaintiffs to perform reasonably and in good faith.

## COUNT I: BREACH OF CONTRACT (WARRANTY)

57. Plaintiffs incorporate all allegations contained in the preceding paragraphs as if fully set forth herein.

58. Plaintiff Shineco and Defendant Nasdaq are parties to the Listing Agreement.

59. In the Listing Agreement, Defendant warranted that it would endeavor to provide services to Shineco in a good and workmanlike manner.

60. Defendant's warranty obligated Defendant to apply its Listing Rules and the procedures thereunder reasonably and accurately.

61. Defendant breached its warranty by issuing a delisting decision based on active disregard of essential facts and cursory analysis without reasoning.

62. As a result of Defendant's breach, Plaintiff Shineco will suffer imminent, irreparable economic damage from the deprivation and loss of active trading of its securities on the Nasdaq, as well as to its commercial reputation and financial profile.

63. Plaintiff Shineco therefore seeks the relief stated below.

**COUNT II: BREACH OF CONTRACT**
**(IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)**

64. Plaintiffs incorporate all allegations contained in the preceding paragraphs as if fully set forth herein.

65. Plaintiff Shineco and Defendant Nasdaq are parties to the Listing Agreement.

66. The terms of the Listing Agreement apply the laws of the State of New York to construe and enforce the Listing Agreement.

67. Under New York law, all contracts contain an implied covenant of good faith and fair dealing, consisting of "a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Moran v. Erk*, 11 N.Y.3d 452, 456 (N.Y. 2008).

68. Defendant breached the Listing Agreement's implied covenant of good faith and fair dealing by arbitrarily and unreasonably applying the reverse stock split rule under Nasdaq Listing Rule 5810(c)(3)(A)(iv) retroactively to Plaintiff Shineco's November 12, 2024 reverse stock split.

69. Defendant further breached the implied covenant of good faith and fair dealing by arbitrarily and unreasonably refusing to exercise the discretion provided under the Listing Rules to allow Plaintiff Shineco to undertake specific compliance measures to avert delisting.

70.　　Lastly, Defendant breached the implied covenant of good faith and fair dealing purposefully pursuing the delisting of Plaintiff Shineco's securities on a schedule of remedial action that rendered a showing of compliance impossible.

71.　　As a result of Defendant's breach, Plaintiff Shineco will suffer imminent, irreparable economic damage from the loss of active trading of its securities, as well as to its commercial reputation and financial profile.

72.　　Plaintiff Shineco therefore seeks the relief stated below.

## COUNT III: BREACH OF CONTRACT (WARRANTY) – THIRD PARTY BENICIARIES

73.　　Plaintiffs incorporate all allegations contained in the preceding paragraphs as if fully set forth herein.

74.　　Plaintiffs Sheng and Yao are shareholders of Plaintiff Shineco.

75.　　Defendant and Plaintiff Shineco intended the Listing Agreement to benefit Shineco shareholders, including Plaintiffs Sheng and Yao, by listing their shares on the Nasdaq exchange.

76.　　Plaintiffs Sheng and Yao are therefore third-party beneficiaries of Defendant's Listing Agreement warranty to perform in a good workmanlike manner.

77.　　Defendant's warranty obligated Defendant to apply its Listing Rules and the procedures thereunder reasonably and accurately.

78.　　Defendant breached its warranty by issuing a delisting decision based on active disregard of essential facts and cursory analysis without reasoning.

79.　　As a result of Defendant's breach, Plaintiffs Sheng and Yao will suffer imminent, irreparable economic damage by the delisting from the Nasdaq of their substantial holdings of publicly traded shares.

80. Plaintiffs Sheng and Yao therefore seek the injunctive and declaratory relief stated below.

### COUNT IV: BREACH OF CONTRACT (IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING) – THIRD PARTY BENICIARIES

81. Plaintiffs incorporate all allegations contained in the preceding paragraphs as if fully set forth herein.

82. Plaintiffs Sheng and Yao are shareholders of Plaintiff Shineco.

83. Defendant and Plaintiff Shineco intended the Listing Agreement to benefit Shineco shareholders, including Plaintiffs Sheng and Yao, by listing their shares on the Nasdaq exchange.

84. Plaintiffs Sheng and Yao are therefore third-party beneficiaries of Defendant's Listing Agreement implied covenant of good faith and fair dealing.

85. Defendant breached the Listing Agreement's implied covenant of good faith and fair dealing by arbitrarily and unreasonably applying the reverse stock split rule under Nasdaq Listing Rule 5810(c)(3)(A)(iv) retroactively to Plaintiff Shineco's November 12, 2024 reverse stock split.

86. Defendant further breached the implied covenant of good faith and fair dealing by arbitrarily and unreasonably refusing to exercise the discretion provided under the Listing Rules to allow Plaintiff Shineco to undertake specific compliance measures to avert delisting.

87. Lastly, Defendant breached the implied covenant of good faith and fair dealing purposefully pursuing the delisting of Plaintiff Shineco's securities on a schedule of remedial action that rendered a showing of compliance impossible.

88. As a result of Defendant's breach, Plaintiffs Sheng and Yao will suffer imminent, irreparable economic damage by the delisting of their substantial holdings of publicly traded shares.

89. Plaintiffs Sheng and Yao therefore seek the injunctive and declaratory relief stated below.

## COUNT V: DECLARATORY JUDGMENT

90. Plaintiffs incorporate all allegations contained in the preceding paragraphs as if fully set forth herein.

91. 28 U.S.C. § 2201 permits the Court to declare the rights and legal relations of any interested party seeking a declaration, in a case of actual controversy within its jurisdiction.

92. This action presents an actual controversy over the parties' respective rights and obligations under the Exchange Act, the Listing Agreement, and the Defendant's federally regulated Listing Rules, which is sufficiently immediate to warrant declaratory judgment because of Defendant's threatened delisting of Plaintiff Shineco's securities.

93. Plaintiffs therefore seek the Court render a declaratory judgment as to the parties' legal rights and relations in the substance requested below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

(a)     Enjoin Nasdaq from suspending and delisting Shineco's common stock from the Nasdaq until the Listing Council has called for review the Hearings Panel decision and stayed the suspension and delisting; and for Shineco to exhaust its appeal rights within the Nasdaq, to the SEC and, if necessary, thereafter to the United States Court of Appeals

(b)     Issue a stay of any suspension and delisting from the Nasdaq of Shineco's common stock until such time as Shineco has exhausted its appeal rights within the Nasdaq, to the SEC and, if necessary, thereafter to the United States Court of Appeals;

(c)     Issue a declaration that the parties' rights and obligations under the Listing Agreement and Defendant's obligations under the Nasdaq Listing Rules require Defendant

to maintain the listing of Plaintiff Shineco's securities on the Nasdaq Capital Market until the conclusion of appeals of Defendant's suspension and delisting action at the Listing Council and the SEC; and

(d) Such other and further relief as the Court deems just and proper.

## Verification

I am the Corporate Secretary of Shineco, Inc., a plaintiff in this case. I have reviewed this Complaint and know the contents thereof. The allegations in this Complaint are true to the extent of my personal knowledge; for the allegations not within my personal knowledge, I believe them all to be true based on my review of the cited documents and on my communications with the other Plaintiffs and Shineco, Inc. personnel.

Pursuant to Title 28, section 1746, subsection (1) of the United States Code, I, verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: July 28, 2025

_____
Anna Liu
Corporate Secretary, Shineco, Inc.

Dated: July 28, 2025

DICKINSON WRIGHT PLLC

s/ David S. Becker
David S. Becker (5649702)
55 West Monroe, Suite1200
Chicago, IL 60603
Tel: 312.377.7881
Fax: 844.670.6009
DBecker@dickinsonwright.com

Jacob S. Frenkel *(pro hac vice to be filed)*
Gregory L. Ewing *(pro hac vice to be filed)*
Brooks T. Westergard *(pro hac vice to be filed)*
Brian S. Yu *(pro hac vice to be filed)*
1825 I St., N.W., Suite 900

        Washington, DC  20006
Tel: 202.457.0160 (Switchboard)
Tel: 202.466.5953 (Frenkel)
Tel: 202.659.6954 (Ewing)
Tel: 775.343.7510 (Westergard)
Tel: 202.659.6972 (Yu)
Fax: 844.670.6009
jfrenkel@dickinsonwright.com
gewing@dickinsonwright.com
bwestergard@dickinsonwright.com
byu@dickinsonwright.com

*Attorneys for Plaintiffs Shineco, Inc., Xia Sheng, and Huan Yao*

## CERTIFICATE OF SERVICE

I certify that on July 28, 2025, I electronically filed or caused to be filed the foregoing *Plaintiffs' Verified Complaint* with the Clerk of the Court using the CM/ECF system, which will send electronic notice to counsel of record.

        s/ David S. Becker
David S. Becker (5649702)
55 West Monroe, Suite1200
Chicago, IL 60603
Tel: 312.377.7881
Fax: 844.670.6009
DBecker@dickinsonwright.com